## 66350. FALAGIAN v. LEADER NATIONAL INSURANCE COMPANY.

McMURRAY, Presiding Judge.

This case involves a no-fault, personal injury protection claim. Rosalio H. Falagian, the insured, contends he was injured in an automobile collision on November 20, 1981. He notified his insurer, Leader National Insurance Company, on December 7, 1981, and he filed a claim for personal injury protection benefits on January 8, 1982. He claimed both medical expenses and lost wages. Two bills for chiropractic treatment, totalling $1,168, were submitted to the insurer on or about January 7, 1982, which were paid on January 18, 1982. The insurer then received undated chiropractic bills on or about January 22, 1982, February 26, 1982, and March 15, 1982, totalling $1,413 (for a grand total of $2,581). The insurer received information from the insured's employer with reference to lost wages on February 26, 1982, dated February 24, 1982.

In the meantime, the insurer became suspicious of the legitimacy of the claim because over $2,000 in chiropractic bills had been incurred in the period of one month (January) and the accident report had not indicated any injury to the insured. Consequently, the insurer notified the insured, through his attorney, that he would be required to submit to an independent medical examination, as provided by the terms of the insurance policy.

Sometime prior to February 19, 1982, the insurer scheduled an appointment for the insured to be examined by a medical doctor on March 4, 1982, but the doctor cancelled the appointment. The insured's attorney then advised defendant that he would ensure that the appointment would be rescheduled directly with the doctor. Instead of this being done, the insured filed suit against defendant on

March 15, 1982. Plaintiff now appeals the grant of summary judgment in favor of defendant. *Held:*

The main issue presented by plaintiff is whether an insurer which is already in violation of OCGA § 33-34-6 (b) (formerly Code Ann. § 56-3406b (b) (Ga. L. 1974, p. 113, 119; 1975, p. 1202, 1208)) is excused from paying lost wages upon the refusal of its insured to submit to an independent medical examination. This statement of the issue, however, presupposes that defendant was in violation of OCGA § 33-34-6 (b) (Code Ann. § 56-3406b), supra. That section provides in pertinent part: "The benefits are overdue if not paid within 30 days after the insurer receives reasonable proof of the fact and the amount of the loss sustained."

At the time of the filing of the lawsuit, March 15, 1982, the only unpaid claim outside the thirty day limit was a chiropractic bill in the amount of $850, received by defendant on or about January 22, 1982. The two chiropractic bills received previously were paid by defendant, and the two received subsequently on February 26, 1982, and March 15, 1982, were received less than thirty days before the filing of the suit, as was the information concerning plaintiff's employment and lost wages. Thus, any assertion of a violation of OCGA § 33-34-6 (b) (Code Ann. § 56-3406b), supra, can only relate to the one $850 chiropractic bill.

As stated above, OCGA § 33-34-6 (b) (Code Ann. § 56-3406b) requires payment of benefits within thirty days of receipt of "reasonable proof of the fact and the amount of the loss sustained." Sometime prior to February 19, 1982 (within thirty days of receiving the $850 bill), defendant notified plaintiff in effect that it was unsatisfied with the reasonableness of his proof of injury and that it was therefore exercising its contract right to have him submit to a medical examination, with further payments being conditional upon the results of that examination. See in this regard *Morris v. Aetna Life Ins. Co.,* 160 Ga. App. 484, 485-486 (1, 2) (287 SE2d 388).

While defendant "had a right to require [plaintiff] to abide by the terms of the policy" (*Morris v. Aetna Life Ins. Co.,* supra at 486 (2)), that right is limited by the reasonableness of its exercise under the circumstances when it delays payment. The question of that reasonableness is generally for the jury (*Bituminous Cas. Corp. v. Mowery,* 145 Ga. App. 45, 49 (2) (244 SE2d 573)), but there are instances in which it can be decided as a matter of law by the court. *Ga. Farm Bureau Mut. Ins. Co. v. Matthews,* 149 Ga. App. 350, 352 (2) (254 SE2d 413). In either case, the burden is upon the insurer to show reasonableness. The rule is enunciated in OCGA § 33-34-6 (b) (Code Ann. § 56-3406b), supra, as: "In the event the insurer fails to pay each benefit when due, the person entitled to the benefits may bring an

action to recover them and the insurer must show that its failure or refusal to pay was in good faith . . ."

Applying these rules to the facts in the case sub judice, defendant was authorized to withhold payment of the claim beyond thirty days, pending the medical examination, only if the suspicions prompting the requiring of the examinations were reasonable. The circumstances here clearly warranted the suspicions and defendant was justified in requiring that plaintiff submit to a medical examination. Plaintiff's chiropractic expenses were substantial over a short period of time, yet no injuries were indicated by the accident report. Defendant notified plaintiff within thirty days of receipt of the $850 chiropractic bill that it was opting to exercise the contract provision, which was only after it had already paid $1,168 in chiropractic bills promptly. We find from these circumstances that defendant has met its burden of proof in showing that "its failure or refusal to pay was in good faith." OCGA § 33-34-6 (b) (Code Ann. § 56-3406b), supra.

We are not persuaded by plaintiff's further argument in support of his contention that defendant's action was in bad faith. Plaintiff argues that he was no longer disabled and back to work by the time defendant demanded he take the medical examination and therefore the examination would have been useless. Assuming that plaintiff was in fact no longer disabled and back to work, we find that his argument does not defeat, or even create a jury issue as to defendant's showing of good faith. As stated in plaintiff's brief "not having received his lost wages as promised [he] decided not to see Defendant's doctor and instead initiated this action." Had plaintiff taken the medical examination and had the results proven negative or inconclusive, *then* the burden would have been upon defendant to show that those results were indicative of plaintiff's condition at the time each benefit was claimed. Plaintiff's refusal to submit to the examination, however, pretermits this requirement.

The defendant was authorized under the circumstances to have plaintiff submit to a medical examination pursuant to the terms of the insurance contract. Plaintiff's refusal was a breach of the insurance contract in failing to comply (filing suit instead). See *Morris v. Aetna Life Ins. Co.,* 160 Ga. App. 484, supra at 486 (2). Accordingly, the trial court correctly granted defendant's motion for summary judgment.

*Judgment affirmed. Shulman, C. J., and Birdsong, J., concur.*

DECIDED SEPTEMBER 8, 1983.

*Harry A. Bendiburg,* for appellant.

*Roger Mills,* for appellee.