74301. HUDSON v. OMAHA INDEMNITY COMPANY.
(360 SE2d 406)

CARLEY, Judge.

Appellant-plaintiff is afforded coverage under a policy of automobile insurance issued by appellee-defendant. On November 9, 1984, appellant was involved in a multi-vehicle collision. Although appellant reported suffering no physical injuries as a result of the collision,

he subsequently filed a claim seeking from appellee no-fault benefits for lost wages. This claim alleged a period of disability which had begun on November 25, 1984, and which had continued until March 22, 1985. Appellee paid this claim without dispute.

On August 14, 1985, appellee received another no-fault claim in which appellant once again sought benefits for lost wages. This claim alleged that, as a result of the lingering effects of the November 1984 collision, appellant had again become disabled from April 2, 1985 until August 2, 1985. Since appellant had initially reported suffering no injuries as a result of the collision, appellee did not immediately pay appellant's second claim purporting to be based upon a disability which had allegedly resulted from that collision. Instead, appellee exercised its right under the policy to request that appellant submit to an independent medical examination. The examination was conducted on September 20, 1985, having been rescheduled from September 10, 1985 for appellant's convenience. Appellee was presented with the physician's preliminary findings in a telephone call on October 7, 1985, and received the final written medical report on October 14, 1985.

Appellant filed this action on October 15, 1985, before appellee had reached its final decision with regard to its payment of appellant's claim. Appellant sought to recover not only the no-fault benefits for lost wages, but also penalties, punitive damages, and attorney's fees. After filing a timely answer to appellant's complaint, appellee subsequently determined that appellant was entitled to payment of the entire amount of his claim. Accordingly, on November 7, 1985, appellee made an unconditional offer to appellant of that full amount. Appellant refused the offer. Appellee then secured permission to deposit into the registry of the court the full amount of appellant's claim for no-fault benefits as it was authorized to do pursuant to OCGA § 9-11-67.

The parties filed cross-motions for summary judgment. After conducting a hearing, the trial court ordered payment to appellant of the funds held in the registry of the court. On the issue of penalties, punitive damages, and attorney's fees, the trial court granted summary judgment in favor of appellee and denied appellant's motion for summary judgment. Appellant appeals from this order granting appellee's motion for summary judgment and denying appellant's motion.

1. OCGA § 33-34-6 (b) requires payment of no-fault benefits within 30 days of the insurer's receipt of "reasonable proof of the fact and amount of loss sustained." OCGA § 33-34-6 (c) requires payment of no-fault benefits within 60 days "after proper proof of loss has been filed" by the insured. However, what the insured himself has offered in support of his claim does not necessarily constitute "rea-

sonable proof" and "proper proof" thereof so as to trigger the applicability of the 30/60-day provisions of OCGA § 33-34-6. "Procedurally, we visualize a PIP claim as no different than any other claim against an insurer. It can hardly be argued that an insurer cannot investigate what reasonably appears to be a questionable claim simply because the underlying statute authorizing the coverage does not mention such investigative rights. [Cit.]" *Morris v. Aetna Life Ins. Co.*, 160 Ga. App. 484, 485 (1) (287 SE2d 388) (1981). Thus, it has been recognized that the insurer, in the exercise of its right to investigate an insured's no-fault claim, may require that the insured further support the claim he has filed by submitting to an independent medical examination. See *Morris v. Aetna Life Ins. Co.*, supra; *Falagian v. Leader Nat. Ins. Co.*, 167 Ga. App. 800 (307 SE2d 698) (1983). However, the insurer cannot automatically insulate itself from potential liability under OCGA § 33-34-6 merely by requesting that the insured submit to an independent medical examination. The right of the insurer to require that the insured further submit to an independent medical examination "is limited by the reasonableness of its exercise under the circumstances." *Falagian v. Leader Nat. Ins. Co.*, supra at 801. Thus, an insurer is "authorized to withhold payment of [a no-fault] claim beyond thirty [or sixty] days, pending [a] medical examination, only if the suspicions prompting the requiring of the [examination] were reasonable." *Falagian v. Leader Nat. Ins. Co.*, supra at 802.

Appellant's no-fault claim of August 14, 1985 was not paid by appellee within 30 or 60 days thereafter. However, the delay was attributable to appellee's request that appellant provide further support for his claim by submitting to an independent medical examination. Accordingly, if, under the existing circumstances, that request was reasonable, the delay pending appellant's independent medical examination would not subject appellee to liability under OCGA § 33-34-6. "The question of that reasonableness is generally for the jury ([cit.]), but there are instances in which it can be decided as a matter of law by the court. [Cit.]" *Falagian v. Leader Nat. Ins. Co.*, supra at 801. The circumstances which were present in this case are virtually identical to those which existed in *Falagian v. Leader Nat. Ins. Co.*, supra. "We find from these circumstances that [appellee] has met its burden of proof in showing that 'its failure or refusal to pay [within 30 or 60 days of August 12, 1985,] was in good faith.' [Cit.]" *Falagian v. Leader Nat. Ins. Co.*, supra at 802. Less than 30 days after appellee had received the results of the independent medical examination, appellant, by filing suit for penalties, punitive damages, and attorney's fees, gave advance notice, in effect, that he would not accept payment of merely the no-fault benefits for lost wages. A "notification in advance that [a payment] will not be accepted waives the tender of [it]." *Southern Life Ins. Co. v. Logan*, 9 Ga. App. 503, 504 (2) (71 SE

742) (1911). Nevertheless, when appellee did make an unconditional offer to pay appellant's claim in full within 30 days of its receipt of the results of the independent medical examination, appellant refused to accept it. "Where an offer is made to pay whatever amount is due, and the person to whom tender is due refuses to accept any amount, the refusal dispenses with the formality of making a legal tender. [Cits.]" *Crawley v. Selby*, 208 Ga. 530, 537 (3) (67 SE2d 775) (1951). Accordingly, the trial court correctly granted summary judgment in favor of appellee and denied appellant's motion for summary judgment.

2. Remaining enumerations of error have been considered, but are without merit.

3. Appellee asserts in its brief that appellant's appeal is frivolous, and urges that appellant's act of pursuing a frivolous appeal would constitute "abusive litigation" under *Yost v. Torok*, 256 Ga. 92 (344 SE2d 414) (1986). Appellee requests that we therefore remand this case to the trial court in order that a *Yost* counterclaim can be filed against appellant.

The *Yost* decision has nothing whatsoever to do with a losing litigant's pursuit of his right to appeal. The only applicable authority for the imposition of a penalty for pursuit of a frivolous appeal is either OCGA § 5-6-6 or Rule 26 (b) of this Court. Appellee has not invoked the applicable authority to penalize appellant, and we deny its request to remand this case to the trial court in order that appellee can file a *Yost* counterclaim against appellant.

*Judgment affirmed. Banke, P. J., and Benham, J., concur.*

DECIDED JULY 1, 1987 —
REHEARING DENIED JULY 28, 1987 — ▮▮▮▮▮▮▮▮

*Fred A. Gilbert*, for appellant.
*Sewell K. Loggins, Brian J. Morrissey, Laura E. Stevenson*, for appellee.